Randolph C. Foster, OSB No. 784340
rcfoster@stoel.com
Steven E. Klein, OSB No. 051165
seklein@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

      Attorneys for Plaintiff


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION


LEGACY HEALTH, an Oregon nonprofit
corporation,

      Plaintiff,

  v.

LEGACY HEALTH GROUP, LLC, a
Utah limited liability company,
CHARLIE WAYNE ESTES, an individual
d/b/a Green Solutions d/b/a Estes Holding
Company, and **DOES 1 through 25**,

      Defendants.

**CV '11 - 1327 - BR**
Case No. _____:

**COMPLAINT**

**(Trademark Infringement; Unfair
Competition; Cyberpiracy; State
Trademark Dilution; Violation of
Washington Consumer Protection Act)**


**DEMAND FOR JURY TRIAL**


For its complaint against defendants Legacy Health Group, LLC; Charlie Wayne Estes

d/b/a Green Solutions d/b/a Estes Holding Company; and Does 1 through 25, plaintiff Legacy

Health alleges as follows:

Page 1   -   COMPLAINT

## I. NATURE OF THE ACTION

1.      For more than two decades, Legacy Health ("Legacy") has been recognized throughout Oregon, Washington and elsewhere as an innovative, high-quality provider of essential medical services. With six hospitals, more than 50 clinics and 2,500 doctors on medical staff, Legacy has a well-deserved reputation for providing the finest in medical care to the communities and patients it serves.

2.      This action arises out of Defendants' infringement of Legacy's federally registered LEGACY® and LEGACY HEALTH SYSTEM® marks to promote, market, distribute and sell various products, including products containing or purporting to contain human chorionic gonadotropin (hCG) that Defendants promote for use as part of an unsafe dietary program called the "hCG Diet."

3.      hCG is a hormone produced by pregnant women that has been approved by the U.S. Food and Drug Administration ("FDA") to treat infertility. hCG in various forms has also been sold or used in conjunction with an ultra low calorie diet program with the representation that the use of hCG causes only excess fat to be burned for energy during the diet rather than a loss of lean muscle or other tissues. This combination of hCG and ultra low calorie dietary intake has been dubbed the "hCG Diet."

4.      As a purported alternative to the use of hCG injections, numerous over-the-counter and purported "homeopathic" products have appeared in the marketplace in an effort to capitalize on this latest fad diet. Just as there is no scientific evidence that hCG injections are chemically effective in promoting or maintaining healthy weight loss, there is no evidence that these over-the-counter, purported homeopathic products (which contain no more than trace amounts of hCG, if any) are chemically effective in promoting healthy weight loss.

Page 2   -   COMPLAINT

5.     An FDA official has been quoted as calling the promotion and sale of these hCG

products an "economic fraud." *See* Nanci Hellmich, *HCG weight-loss products are fraudulent,*

*FDA says*, USA Today, Jan. 23, 2011, *available at* http://www.usatoday.com/yourlife/fitness/

weight-loss-challenge/2011-01-24-hcgdiet24_ST_N.htm.

6.     Defendants have held themselves out to the consuming public as "Legacy Health"

and "Legacy Health Group" for purposes of promoting the hCG Diet and selling products

purportedly containing hCG to be consumed during the diet. Defendants are promoting,

distributing and selling these products using LEGACY, LEGACY HEALTH and LEGACY

HEALTH GROUP to name the products and the source of the products. Defendants have

promoted or sold these hCG products through a dozen or more Internet websites, blogs, "chat

boards" and online videos, including interactive websites maintained at

*www.LegacyHealthGroup.com* and *www.LegacyHCG.com*.

7.     Through the use of the various LEGACY names and phrases to promote weight-

loss services and purported homeopathic and other quasi-pharmaceutical products, Defendants

have infringed and diluted Legacy's valuable and regionally famous LEGACY® and LEGACY

HEALTH SYSTEM® marks and have, through their false and misleading statements, caused

and continue to cause injury to Legacy and its valuable reputation and goodwill.

## II. PARTIES

8.     Plaintiff Legacy Health is a nonprofit, public benefit corporation organized and

existing under the laws of the State of Oregon, with its principal place of business at 1919 NW

Lovejoy Street, Portland, OR 97209-1599. Legacy Health is also a charitable organization as

described in Section 501(c)(3) of the Internal Revenue Code.

70975491.2 0015023-00238

9.      Defendant Charlie Wayne Estes ("Estes") is, upon information and belief, a resident of the State of Utah, with a principal place of business at 1895 Vista Ridge Court, Draper, UT 84020. Upon information and belief, Estes dba Green Solutions dba Estes Holding Company regularly does business in the State of Oregon, including within this district, through, among other things, the advertising, promotion, sale and shipment of LEGACY-branded products to consumers in Oregon via one or more interactive Internet websites and through recruitment, support and business dealings with one or more Oregon-based distributors of such products.

10.     Defendant Legacy Health Group, LLC ("LHG") is, upon information and belief, a limited liability company organized and existing under the laws of the State of Utah with a business address at 1895 Vista Ridge Court, Draper, UT 84020. Defendant Estes formed LHG in February 2010 for the purpose of "selling sports supplements and weight loss products" and, upon information and belief, is the sole and managing member of LHG and, at all relevant times, supervised and controlled the activities of LHG set forth herein. Upon information and belief, LHG regularly does business in the State of Oregon, including within this district, through, among other things, the advertising, promotion, sale and shipment of LEGACY-branded products to consumers in Oregon via one or more interactive Internet websites and through recruitment, support and business dealings with one or more Oregon-based distributors of such products.

11.     Upon information and belief, Legacy Group and Estes regularly do business in the States of Oregon and Washington under one or more assumed business names, including "Legacy," "Legacy Health," "Legacy Health Group," "Legacy HCG," "HCG Weight Loss Drops," "Nubody4Life.com," "Green Solutions" and "Estes Holding Company."

Page 4   -   COMPLAINT

12.     The true names and capacities of defendant Does 1 through 25, inclusive, are unknown to Legacy, and Legacy therefore sues said defendants by such fictitious names. Legacy will file Doe amendments and/or will seek leave of Court to amend this Complaint to show their true names and capacities when the same have been ascertained. Legacy is informed and believes, and on such information and belief alleges, that Does 1 through 25, inclusive, and each of them are primarily responsible for the occurrences herein alleged and that Legacy's damages alleged herein were proximately caused by such Doe defendants. Each reference in this Complaint to "Defendants" includes LHG, Estes and all Doe defendants.

13.     Based on information and belief, Legacy alleges that at all times mentioned herein, Estes and LHG, and each of them, were the agents, servants, employees and alter egos of some or all of the other Defendants, and were acting within the scope of said agency, authority, employment and relationship.

### III. JURISDICTION AND VENUE

14.     This action arises under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125; the Oregon Trademark Dilution Act, Or. Rev. Stat. § 647.107; and the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.20. Jurisdiction is based on 28 U.S.C. §§ 1331, 1332 and 1338, and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

15.     Personal jurisdiction and venue are proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are engaged in the continuous and systematic promotion, sale and distribution of their products in this district, and a substantial part of the events giving rise to the claims in this Complaint occurred in this district.

Page 5   -   COMPLAINT

## IV. FACTS COMMON TO ALL CLAIMS

**A.** **Legacy Health's Business.**

16. Legacy is the largest nonprofit, community-owned health system based in the Portland, Oregon and Vancouver, Washington metropolitan area, with more than 2,500 doctors on medical staff and 9,700-plus employees.

17. Legacy operates six hospitals and other health care facilities and programs in Oregon and Washington. Legacy also provides a wide range of health-related services, including hospice, laboratory, education and research services. It operates pharmacies and provides weight management services.

18. Legacy operates six hospitals under the LEGACY Mark:

- **Legacy Emanuel Medical Center**: Legacy Emanuel Medical Center occupies a vital role in the region as a medical center with around-the-clock expertise for critical health conditions. It provides leading regional care for trauma, burn and intensive care, as well as serving as the hub for Life Flight and other critical care transport.

- **Randall Children's Hospital at Legacy Emanuel**: Randall Children's Hospital at Legacy Emanuel, which opened in 1960, is a regional medical center for children and teens, serving Oregon, Washington, Montana, Alaska, Idaho and other Western States. The busiest pediatric facility in Portland, the hospital features more than 100 hospitalists and sub-specialists to serve virtually every need for children.

- **Legacy Good Samaritan Medical Center**: Legacy Good Samaritan Medical Center is known for its specialty programs and clinical excellence. Legacy

Page 6   -   COMPLAINT

Good Samaritan features nationally renowned doctors in heart care, transplants, cancer care, neurology, ophthalmology, weight-loss surgery, robotic surgery, rehabilitation and more.

- **Legacy Meridian Park Medical Center**: Legacy Meridian Park Medical Center is the South Metro area's most sophisticated medical center. Among its specialized services: a nationally recognized stroke program and chest pain center; advanced surgical capabilities with minimally invasive and robotic technology; orthopedic surgery; cancer care; heart care; a birth center; and a nationally accredited breast health center.

- **Legacy Mount Hood Medical Center**: Legacy Mount Hood Medical Center is a full-service community hospital located in Gresham, Oregon and features the area's most modern emergency department, sophisticated imaging capabilities (MRI, ultrasound, CT scan), a cardiac catheterization suite, a full cancer care center, a birthing center and a range of other services.

- **Legacy Salmon Creek Medical Center**: Legacy Salmon Creek Medical Center is Southwest Washington's most modern hospital.

19.     In addition to its hospital operations, Legacy provides numerous other services to the communities it serves, including but not limited to the following:

- **Legacy Medical Group**: Legacy Medical Group consists of more than 50 primary care clinics and specialty practices across the metro area, plus full-time doctors who care for hospitalized patients— some 300 doctors in all.

Page 7   -   COMPLAINT

- **Legacy Laboratory Services**: Legacy Laboratory Services is a national model for laboratory systems, offering one of the most extensive medical testing services in the region and serving more clients than any other lab service in the area.

- **Legacy Research**: Legacy Research is one of the nation's largest non-academic medical research programs, bringing advanced treatment technologies to Legacy's patients and community.

- **Legacy Hospice**: Legacy Hospice provides physical, emotional, social and spiritual comfort for adults and children who are terminally ill, and for their families. Legacy Hopewell House provides inpatient care in a home-like setting.

20.     Legacy operates The Legacy Good Samaritan Weight Management Institute, which assists patients each year with weight management care, including patient education, support groups, rehabilitation and exercise programs. The Institute is accredited by the American Society for Metabolic and Bariatric Surgery as a Bariatric Surgery Center of Excellence.

21.     Legacy is a committed provider of health education services. Each year more than 10,000 people attend Legacy's classes, forums and support groups on parenting and pregnancy, various diseases, healthy lifestyles (including diet, weight loss and exercise) and caregiving. Through its practitioners, clinics and website Legacy also provides health education on a wide range of topics, including weight loss and weight management, recognizing and evaluating "fad diets," and maintaining healthy eating practices.

70975491.2 0015023-00238

22.     Legacy also works to improve health literacy in the communities it serves, in the belief that patients who possess the ability to understand and act on accurate health information can better take care of themselves, while helping to lower health care costs and reduce emergency room visits.

**B.     The LEGACY Marks.**

23.     Legacy is the owner of and has operated under the trademarks "Legacy," "Legacy Health" and "Legacy Health System" since at least 1989. Legacy is the owner of several LEGACY formative service marks, including but not limited to:

- U.S. Trademark Registration No. 1,847,147 for the mark LEGACY® in connection with health care services, which was registered on the Principal Register on July 26, 1994, and claims a January 18, 1989 date of first use.

- U.S. Trademark Registration No. 1,574,033 for the mark LEGACY HEALTH SYSTEM® in connection with health care services, which was registered on the Principal Register on December 26, 1989, and claims a February 18, 1989 date of first use.

24.     Legacy's registered and incontestable LEGACY® and LEGACY HEALTH SYSTEM® marks (collectively, the "LEGACY Marks") are valid and subsisting, and conclusive evidence of Legacy's exclusive right to use the LEGACY Marks in commerce in connection with health care services. True and correct copies of the registration certificates for the LEGACY Marks are attached hereto as **Exhibit A** and **Exhibit B**

25.     The volume of health care and related services provided by Legacy under the LEGACY Marks is extensive. In the past five fiscal years, Legacy's operations under the

LEGACY Marks have generated more than $1 billion in revenue annually and provided inpatient and outpatient services to over three thousand patients each day.

26.    In addition to traditional expenditures to advertise and promote services under the LEGACY Marks, which were not less than $1,500,000 in fiscal year 2011, Legacy provides unreimbursed care under the LEGACY Marks to those in the communities it serves who cannot afford health care or are uninsured or underinsured, including more than $185 million of such charity and unreimbursed care in fiscal year 2011 and $169 million in fiscal year 2010.

27.    Legacy likewise builds goodwill in the LEGACY Marks through its provision of other free community health services, such as classes, health education, health screenings, resource centers and support groups; community benefit activities, such as activities that develop community health programs and partnerships; and donations to charitable organizations supporting health and human services, civic and community causes, and economic development efforts. Legacy invested more than $4 million in such community activities annually in fiscal years 2010 and 2011.

28.    Legacy conducts advertising under the LEGACY Marks through numerous channels, including but not limited to brochures, fliers, newspapers and magazines, billboards, transit system displays, television and radio. Legacy also promotes its services online through its Internet website, which can be accessed through numerous domain names owned by Legacy, including but not limited to *LegacyHealth.com, LegacyHealth.org, Legacy HealthSystem.com,* and *LHS.org.*

29.    Through substantial investment, promotional efforts, business conduct and use of the LEGACY Marks, Legacy has effectively served  hundreds of thousands of patients throughout Oregon, Washington and elsewhere. The LEGACY Marks have become, through

Page 10  -  COMPLAINT

widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Legacy, its high quality products and services, and its goodwill. As a result of Legacy's efforts, the LEGACY Marks have obtained fame and tremendous public recognition in at least Oregon and Southwest Washington.

**C.    Defendants' Business.**

30.    Defendants are each in the business of promoting the dangerous ultra low calorie hCG diet and promoting, distributing and selling purported "homeopathic" hCG liquid drops and hCG "pellets" for use in connection with the so-called "hCG Diet." These products, which Defendants misleadingly represent contain chemically significant amounts of hCG hormone, are the modern equivalent of "snake oil."

**1.    The hCG Diet.**

31.    The hCG Diet is one of many fad diets promoted to take advantage of consumers' desire for a quick and easy way to lose weight.

32.    As originally conceived, the hCG Diet combines extreme calorie restriction with injections of a hormone produced by pregnant women called human chorionic gonadotropin (hCG). Specifically, the hCG Diet requires that one eat just 500 calories a day. The general guideline for daily calories for men is 2,500 and for women, 2,000. hCG has been approved by the FDA solely for the treatment of infertility and only when prescribed by a physician. Promoters of the hCG Diet, such as Defendants, maintain that hCG suppresses hunger and allows dieters to withstand this extreme calorie deprivation without damage to their lean muscle or other tissues. Supposedly, hCG ensures that the body burns only fat.

33.    The idea of using hCG injections as part of a diet plan was first posited over 50 years ago in a 1957 *Harper's Bazaar* article by A.T.W. Simeons. In the article, Simeons claimed

70975491.2 0015023-00238

that although they were consuming just 500 calories a day, his patients were not hungry as long as they received daily shots of hCG. In addition to promoting weight loss, Simeons claimed hCG injections would also cause a "normal distribution" of fat on the body.

34.    However, as early as 1974, the Journal of the American Medical Association warned against the Simeons hCG diet, saying "[t]he 500-calorie diet used in the Simeons regimen is unphysiological and can lead to substantial protein loss. Thus, there are real questions as to the safety of the regimen, particularly under conditions where medical supervision is minimal." The article also concluded:

- "No convincing scientific evidence exists that [hCG] has any pharmacologic effect in weight reduction. Hence, claims to the public that such effects do occur are a misrepresentation of the scientific facts."

- "The claim that HCG causes preferential mobilization of 'abnormal' fat is unsupported by any acceptable scientific evidence. Thus, no rational basis exists for its use in weight reduction, except as a placebo."

- "Weight loss under the Simeons regimen can be attributed solely to the semistarvation diet that is required."

*See* John C. Ballin, PhD, & Philip L. White, ScD, *Fallacy and Hazard: Human Chorionic Gonadotropin/500-Calorie Diet and Weight Reduction*, Journal of the American Medical Association, Vol. 230, at 693-94 (Nov. 4, 1974).

35.    According the FDA, there is no accepted credible scientific evidence that supports the assertion that hCG suppresses the appetite, aids dieters in reducing their daily caloric intake or causes fat to be burned rather than lean muscle or other tissues under extreme caloric restriction.

Page 12 -   COMPLAINT

36. The use of hCG to promote or assist in weight loss has been carefully studied in over a dozen randomized clinical trials. Each has concluded that hCG injections are no more effective than injections of a saltwater placebo—in other words, people injected with hCG lost the same amount of weight as people injected with a saltwater placebo. *See, e.g.,* G.K. Lijesen et al., *The Effect of Human Chorionic Gonadotropin (HCG) in the Treatment of Obesity by Means of the Simeons Therapy: a Criteria-Based Meta-Analysis,* British Journal of Clinical Pharmacology, Vol. 40, at 237-43 (Sept. 1995) (meta-analysis of published papers relating to eight controlled and 16 uncontrolled trials that measured the effect of hCG in the treatment of obesity; concluding that "that there is no scientific evidence that HCG is effective in the treatment of obesity; it does not bring about weight-loss or fat-redistribution, nor does it reduce hunger or induce a feeling of well-being").

37. According to the American Society of Bariatric Physicians ("ASBP"), a medical association focused on the education and training of medical professionals treating and managing obese patients and obesity-associated diseases, "[n]umerous clinical trials have shown HCG to be ineffectual in producing weight loss" and "[p]hysicians employing either the HCG or the diet recommended by Simeons may expose themselves to criticism from other physicians, from insurers, or from government bodies." *See* American Society of Bariatric Physicians, Position Statement: Use of HCG in the Treatment of Obesity (Nov. 2010), http://www.asbp.org/resources/uploads/files/HCG%20Position%20Statement(1).pdf. It is the position of the ASBP that the "use of HCG for weight loss is not recommended."

38. Recognizing the pervasive misuse of hCG as a dietary aid, the FDA requires the labeling and advertising of prescription hCG to include the following disclosures:

Page 13  -  COMPLAINT

HCG HAS NO KNOWN EFFECT ON FAT MOBILIZATION,
APPETITE OR SENSE OF HUNGER, OR BODY FAT
DISTRIBUTION.

**INDICATIONS AND USAGE:**

HCG HAS NOT BEEN DEMONSTRATED TO BE EFFECTIVE
ADJUNCTIVE THERAPY IN THE TREATMENT OF
OBESITY. THERE IS NO SUBSTANTIAL EVIDENCE THAT
IT INCREASES WEIGHT LOSS BEYOND THAT RESULTING
FROM CALORIC RESTRICTION, THAT IT CAUSES A MORE
ATTRACTIVE OR "NORMAL" DISTRIBUTION OF FAT, OR
THAT IT DECREASES THE HUNGER AND DISCOMFORT
ASSOCIATED WITH CALORIE-RESTRICTED DIETS.

39.     In April 2011, the FDA updated label safety warnings for hCG to include a

disclosure that anaphylaxis and other hypersensitivity reactions have been reported with hCG

products. *See, e.g.,* Department of Health and Human Services, Food and Drug Administration,

Supplement Approval, NDA 0171016/S-156 (Apr. 15, 2011); Department of Health and Human

Services, Food and Drug Administration, Supplement Approval, NDA 017067/S-057 (Apr. 15,

2011).

40.     The misuse and misrepresentation of hCG persists.  On May 9, 2011, a

naturopathic physician from Port Angeles, Washington, pled guilty in U.S. District Court for the

Western District of Washington to a felony charge based on his distribution of hCG misbranded

as a weight loss drug.  Press Release, Food and Drug Administration, Office of Criminal

Investigation, *Port Angeles Naturopath Leads Guilty to Importing Misbranded Drugs* (May 9,

2011), http://www.fda.gov/ICECI/CriminalInvestigations/ucm255152.htm (noting hCG "is

approved by the FDA to treat infertility, but is not approved for weight loss").

**2.     "Homeopathic hCG."**

41.     Defendants purport to sell "homeopathic" hCG products.  The practice of

homeopathy is based on the belief that disease symptoms can be cured by small doses of

Page 14  -   COMPLAINT

substances that produce similar symptoms in healthy people. The homeopathic principle of dilutions (or "law of minimum dose") states that the *lower* the dose of the medication, the *greater* its effectiveness. Homeopathy is based on the claimed ability of water and other liquids to retain a "memory" of substances previously dissolved into the liquid.

42.     In homeopathy, substances are diluted with alcohol or distilled water in a stepwise fashion and shaken vigorously between each dilution. This process is believed to transmit some form of information or energy from the original substance to the final diluted remedy. Most homeopathic remedies are so dilute that no molecules of the supposedly "healing" substance remain; however, in homeopathy, it is believed that the substance has left its imprint or "essence" in the liquid, which stimulates the body to heal itself. There is no credible accepted scientific support for the theory of liquid memory.

43.     The FDA defines a homeopathic drug as any drug labeled as being homeopathic that is also listed in the Homeopathic Pharmacopeia of the United States ("HPUS"), or an addendum or supplement to the HPUS. *See* 21 U.S.C. § 321(g)(1)(A); Food and Drug Administration, Inspections, Compliance, Enforcement, and Criminal Investigations, *Conditions Under Which Homeopathic Drugs May be Marketed*, Compliance Policy Guides ("CPG") § 400.400. According to the FDA, the HPUS is a "compilation of standards for source, composition, and preparation of homeopathic drugs. HPUS contains monographs of drug ingredients used in homeopathic treatment." CPG § 400.400.

44.     Although the HPUS describes how ingredients are prepared for homeopathic use, it does not state that the drugs are fit to treat specific symptoms, ailments or conditions. Instead, the HPUS allows the practitioner or manufacturer to set forth the substance's indications for use. The FDA takes the position that a product's compliance with the requirements of HPUS "does

Page 15  -  COMPLAINT

not establish that it has been shown by appropriate means to be safe, effective, and not misbranded for its intended use." CPG § 400.400.

45.     Seeking to capitalize on the recent resurgence in popularity of the hCG Diet, numerous over-the-counter hCG weight loss products labeled as "homeopathic" have appeared in the marketplace. These products, which are being dispensed without a prescription, contain no more than trace amounts of hCG, if any, and, like hCG injections, there is no scientific evidence whatsoever that they are effective aids in weight loss. Defendants' products fit this profile.

46.     In December 2008, Mediral International, Inc., a manufacturer of homeopathic remedies, warned its resellers:

> Custom remedies containing homeopathic hCG have . . . become more popular in recent months, but it is important to remember that a homeopathic remedy is not the same as the concentrated prescription substance.
>
> Mediral recommends that users of homeopathic hCG exercise prudence when counseling with clients to avoid making claims that the FTC might interpret as fraudulent or deceptive. There are, as yet, no monographs or provings of hCG. Do not claim the same results from homeopathic hCG that the prescription injectable hCG produces. The custom singular that Mediral makes of hCG is labeled "HCG Detox" as a reminder that the only defensible use for homeopathic hCG is as a detoxifier.

Mediral International, Inc., *Homeopathic hCG*, Topics in Modern Homeopathy: Homeopathic Medicine for the 21st Century, at 3 (Dec. 2008).

47.     Although hCG products, such as those sold by Defendants, are frequently labeled as "homeopathic," on information and belief, hCG is not included in the HPUS for dietary purposes, and, therefore, Defendants' products cannot be labeled "homeopathic" under FDA regulations for use as a dietary aid.

Page 16  -  COMPLAINT

48.     Prompted by concern that consumers may assume products claiming to be

"homeopathic HCG" have the same track record for safe use as other homeopathic drugs, the

American Association of Homeopathic Pharmacists, an industry trade group, recently issued the

following statement about products alleging to be "homeopathic hCG" being advertised for use

in weight-loss programs:

> Many websites not only claim that these HCG products are
> homeopathic, but they also claim that they are prepared
> homeopathically according to the highest HPUS (Homeopathic
> Pharmacopoeia of the United States) guidelines. HCG has never
> been evaluated by HPUS and the HPUS has no quality standards
> for HCG. Consumers are likely to be misled by this claim.
>
> Many sites also claim that their products are "official," without
> defining that term. The only official drugs recognized under the
> Federal Food, Drug, and Cosmetic Act are those which are the
> subject of a monograph in the United States Pharmacopeia or the
> Homoeopathic Pharmacopeia of the United States. There is no
> such monograph for a homeopathic HCG product.

American Association of Homeopathic Pharmacists, *American Association of Homeopathic*

*Pharmacists (AAHP) Addresses Misleading Claims by HCG Products as Being "Homeopathic,"*

Aug. 14, 2011, *available at* http://www.homeopathicpharmacy.org/pdf/press/

AAHP_Statement_on_HCG.pdf.

49.     According to Elizabeth Miller, an official with the FDA's Internet and health

fraud unit, there is no evidence that oral over-the-counter homeopathic hCG products are

effective for weight loss. Ms. Miller described such products as "economic fraud." *See*

Hellmich, *supra*.

**D.      Defendants' Promotion and Sale of "Homeopathic" hCG Through a Multi-Level
         Marketing Scheme.**

50.     On information and belief, Defendants operate through a multi-level marketing

scheme directed by Estes and LHG, whereby LHG purports to act as a producer, wholesaler and

Page 17  -  COMPLAINT

retailer of "homeopathic hCG," while at the same time recruiting its own customers to act, on information and belief, as non-salaried salespeople, referred to as "distributors," in representing LHG products to other consumers.

51.     On information and belief, LHG distributors develop their organizations by either building an active base of customers, who buy direct from LHG, or by recruiting additional distributors downstream from them who also build a customer base, thereby expanding the overall organization. On information and belief, LHG distributors are awarded a commission based upon the volume of product sold through their own sales efforts as well as that of their downstream organization and also profit by retailing "homeopathic hCG" products they purchased from LHG at wholesale prices.

52.     On information and belief, LHG provides its distributors with extensive marketing support and direction, including but not limited to sales materials, trifolds, banners, and posters; personalized, custom designed websites; access to social networking pages "with thousands of followers"; drop shipping of products; "business ideas"; and "[a]ll the HCG Information you need to get started."

53.     On information and belief, when LHG signs up a new distributor, it requires the distributor to agree to the following terms and conditions:

> I agree that Legacy Health Group (LHG) is a HCG wholesaler of
> FDA approved HCG and HCG Plus products. LHG gives
> distributors tools they need to create a business selling HCG
> products. LHG requires that is distributors only sell HCG products
> produced and distributed by Legacy Health Group. No products
> sold by LHG are refundable nor do we guarantee success in the
> sales of our HCG products. Web design and graphic design work
> will be done by a partner company and any issues regarding work
> done will need to be taken up with our partner company. LHG will
> not and can not be held liable for the health of your customers,
> your business success or the materials that we supply.

Page 18 -   COMPLAINT

54.     On information and belief, the representation that LHG is a wholesaler of "FDA approved HCG and HCG Plus products" is false and deceptive, as no new drug application for any of LHG's hCG products has ever been submitted for—or received—FDA approval.

55.     On information and belief, LHG encourages its distributors to promote LHG products through the Internet, including through blogs and social media sites like Facebook, YouTube and Twitter.

**E.     Defendants' Misuse of the LEGACY Marks to Promote, Market and Sell Their "Homeopathic hCG" Products.**

**1.     Defendants' LEGACY Products.**

56.     Since at least as early as February 2010, Defendants have continuously made, promoted, marketed, distributed and/or sold various weight loss and anti-aging products throughout the United States, including in Oregon and Washington, under the LEGACY, LEGACY HEALTH and LEGACY HEALTH GROUP marks, without Legacy's permission.

57.     The products offered and sold by Defendants under the LEGACY, LEGACY HEALTH and LEGACY HEALTH GROUP marks include, but are not limited to, unapproved "homeopathic hCG" products, such as "Legacy HCG" oral drops (pictured at right) and "HCG Plus" oral drops, as well as "homeopathic hCG" oral pellets.



58.     A bottle of LEGACY HEALTH GROUP Legacy HCG oral drops is sold by Defendants for $84.99. The bottle contains two fluid ounces of liquid, a 23-day supply if taken as directed.

59.     A bottle of LEGACY HEALTH GROUP HCG Plus oral drops is sold by Defendants for $89.99. The bottle contains two fluid ounces of liquid, a 23-day supply if taken as directed.

Page 19 -    COMPLAINT

60.     A bottle of LEGACY HEALTH GROUP HCG Plus oral pellets is sold by

Defendants for $89.99.  The bottle contains 480 pellets, a 40-day supply if taken as directed.

61.     Defendants have also offered and sold under the LEGACY, LEGACY HEALTH

and LEGACY HEALTH GROUP marks various

informational "guides" and "cookbooks"

promoting the use of "homeopathic" hCG as part

of the hCG Diet, including but not limited to the

Legacy Health Group HCG Weight-Loss Ebook

and the Legacy Health Group Diet Gourmet

Cookbook (depicted at right).



62.     Defendants have also offered and sold other products under the LEGACY,

LEGACY HEALTH and LEGACY HEALTH GROUP marks, including but not limited to

"Legacy HGH Spray Complex," a purported "homeopathic" human growth hormone ("HGH")

spray, and "Legacy's Super Sublingual B-12 Drops," a purported "homeopathic" Vitamin B-12

hCG Diet "supplement."

63.     On information and belief, HGH, like hCG, is not included in the HPUS and,

thus, cannot be legally distributed as a homeopathic drug.  *See* American Association of

Homeopathic Pharmacists, *Position regarding Homeopathic Human Growth Hormone (HGH)* at

http://www.homeopathicpharmacy.org/aboutaahp/statements/HGH.php.

**2.      Defendants' LEGACY Websites.**

64.     Defendants have made and continue to make extensive use of the Internet and

social media sites in connection with the promotion, marketing and sale of products under the

LEGACY, LEGACY HEALTH and LEGACY HEALTH GROUP marks.

70975491.2 0015023-00238

i.    The *LegacyHealthGroup.com* Website.

65.    Defendant Estes registered the Internet domain name *LegacyHealthGroup.com*

under the assumed business name Green Solutions on or about October 14, 2009.

66.    On information and belief, by no later than February 2010, Estes and LHG were

using *LegacyHealthGroup.com* as the primary website for the promotion, distribution and sale of

products under the LEGACY, LEGACY HEALTH and LEGACY HEALTH GROUP marks, as

depicted in the screen capture below.



Page 21  -  COMPLAINT

67.     In addition to offering LEGACY-branded products through an interactive online "store," the *LegacyHealthGroup.com* website also contained an "About" page, which stated, "Legacy Health Group is here to give you an easy way to lose weight and feel great with our high quality pharmaceutical grade products. Whether it be the HCG diet or anti aging we have what you need at a great price." The site further boasted that "Legacy Health Group has distributors throughout the United States."

ii.     **The *LegacyHCG.com* Website.**

68.     On or about May 18, 2010, LHG registered the Internet domain name *LegacyHCG*.com.

69.     On information and belief, by no later than June 2010, Estes and LHG were using *LegacyHCG.com* for a second website promoting the distribution and sale of products under the LEGACY, LEGACY HEALTH and LEGACY HEALTH GROUP marks, as depicted in the screen capture below.



70975491.2 0015023-00238

70.     Like the *LegacyHealthGroup.com* website, the *LegacyHCG.com* website also incorporates an interactive online store offering LEGACY-branded products.

### iii.     The *hcgWeightLossDrops.com* Website.

71.     On information and belief, Estes and Legacy Group, doing business as "HCG Weight Loss Drops," also maintain and operate a website at *hcgWeightLossDrops.com* for the purpose of promoting the distribution and sale of products under the LEGACY, LEGACY HEALTH and LEGACY HEALTH GROUP marks, as depicted in the screen capture below.



72.     On information and belief, Estes and LHG maintain a nearly identical website at *hcgPelletsReview.com*.

73.     On information and belief, other websites through which Estes and LHG promote and sell hCG products under the LEGACY, LEGACY HEALTH and LEGACY HEALTH

Page 23   -   COMPLAINT

GROUP marks, include but are not limited to *hcglifestylesolution.com*, *hcglosefast.com*, *nubody4life.com*, *onestophcgstore.com* and *hcgpelletreview.com*.

### iv. The Legacy Group Social Media Pages.

74. On information and belief, Estes and LHG maintain a business page on Facebook.com by under the profile name "HCG Diet." The profile information for Defendants' page provides a link to the *LegacyHealthGroup.com* website and states, among other things, that "LHG has Distributors throughout the US they have everything you need to get started on a safe and smart path to loosing [sic] weight."

75. Defendants Estes and LHG frequently post messages to the Facebook page encouraging visitors to purchase Defendants' LEGACY-branded hCG products from one of Defendants' authorized distributors or directly from Defendants at *LegacyHealthGroup.com*. An example of one such posting is set forth below:



76. Defendants' authorized distributors also frequently make posts advertising the sale of Defendants' LEGACY-branded hCG products and providing links to the distributors' websites and online stores. Distributors often identify themselves in such postings as "A Legacy Distributor."

Page 24 - COMPLAINT

77. On information and belief, Defendants Estes and Legacy Group not only monitor and encourage such postings by their authorized distributors, but they frequently indicate their public approval of individual postings through use of Facebook's "Like" feature. An example of one recent posted advertisement approved by Defendants is set forth below:



79. On information and belief, Defendants Estes and LHG also maintain and operate an "HCG Diet Forum" online bulletin board at the domain *hcgDietChat.com*. Among other things, a link to the "HCG Diet Forum" bulletin board is provided on each of the websites maintained and operated by Defendants at *LegacyHealthGroup.com*, *LegacyHCG.com* and *hcgWeightLossDrops.com*. Similarly, Defendants' Facebook page encourages readers to "Visit our HCG Forum www.hcgdietchat.com."

80. Like the Facebook page, the HCG Diet Forum provides a venue for Defendants, who post on the forum using the profile name "LegacyHealth," and their distributors to advertise and promote Defendants' LEGACY-branded homeopathic hCG products.

70975491.2 0015023-00238

81. However, the HCG Diet Forum also serves as an active venue for third-party postings purporting to offer, among other things:

- the online sale without a prescription of a wide range of drugs scheduled under the federal Controlled Substances Act, including but not limited to Oxycodone, Oxycontin, Valium, Adderall, Xanax and others;

- links to online hardcore pornography and pornographic Internet web sites; and

- links to pirated copies of major motion pictures and popular video games.

82. On information and belief Estes and LHG collect referral fee revenue for banner and/or sponsored pay-per-click adverting posted on the HCG Diet Forum. On information and belief, Estes and LHG also collect advertising fees from LHG distributors who are listed on the site and require listed distributors to, among other things, provide a link to the HCG Diet Forum on their website and maintain uniform pricing on LHG products.

83. On information and belief, Estes and LHG have also registered the "LegacyHCG" screen name through the Twitter online messaging service. The profile information for Defendants' "LegacyHCG" screen name provides a link to the *LegacyHealthGroup.com* website and states, among other things, that "[w]e help people lose those unwanted pounds with HCG drops and HCG pellets, you can also become a distributor and sell HCG wholesale."

84. On information and belief, Defendants Estes and LHG frequently post or "tweet" promotional messages under the "LegacyHCG" screen name encouraging consumers to purchase Defendants' LEGACY-branded hCG products from one of Defendants' authorized distributors or directly from Defendants at *LegacyHealthGroup.com*.

Page 26  -  COMPLAINT

v.     The Legacy Group Distributor Websites.

85.     On information and belief, one or more Legacy Distributors offer and sell

Legacy-branded hCG products online through individualized, standalone Internet websites.

86.     For example, a Legacy Group distributor named Caroline Gates offers and sells

Defendants' products through a website titled "Legacy Homeopathic HCG Diet Drops" located

at the domain *myhcgdietcure.com*, pictured below:



87.     The website provides, among other things, photographs and descriptions of

Defendants' LEGACY-branded "homeopathic hCG" products, an online store for purchasing

such products and links to Defendants' Facebook page and HCG Diet Forum bulletin board.

88.     Other Legacy Group distributor websites include, but are not limited to,

*www.hcgdynamic.com, www.hcgweightloss-solution.net, www.legacyhcgweightloss.webs.com,*

Page 27  -   COMPLAINT

*www.lovemyhcg.net, hcglean.110mb.com, www.wallawallahcg.com, www.hcg123online.com,*
*www.hcgalley.com, www.hcgempowers.com, www.losingwithhcg.com,*
*www.directhcgsource.com* and *www.imnatural.com/legacyhcg.html.*

89.     On information and belief, Defendants maintain, operate, and/or provide content,
design and/or online merchant services to one or more of the websites through which LHG
distributors offer and sell Defendants' LEGACY-branded "homeopathic hCG" products.

**F.      Defendants' False and Misleading Claims**

90.     Since at least February 2010, and continuing through the date of this Complaint,
Defendants and/or their authorized distributors have engaged in online advertising of
Defendants' LEGACY-branded "homeopathic hCG" drops and pellets through various Internet
websites, social media sites, messaging services and electronic publications, as well as through
face-to-face communications.

91.     These advertisements for Defendants' LEGACY-branded "homeopathic hCG"
drops and pellets contain numerous false, deceptive and misleading statements concerning the
nature, regulatory status, health benefits, and safety of hCG; Defendants' "homeopathic hCG"
drops and pellets; and the hCG Diet.

92.     For example, the Internet website maintained by Estes and LHG at
*LegacyHealthGroup.com* includes a page captioned "The Science (How HCG Works)," which
states:

> HCG is a natural water-based hormone present in both men and
> women, although it is produced in great amounts in pregnant
> females. HCG products can safely be used by both males and
> females that [are] looking to get their weight under control.
>
> The HCG hormone kicks up the metabolism, by signaling the body
> to burn more fat. Following the HCG diet protocol your
> metabolism with [sic] operate over 30%--a much more efficient

Page 28  -  COMPLAINT

level to burn, rather than store. In other diets the metabolism has not changed, and following the diet will continue to run at the same rate, which in most of us dieters has been found to be at only 8%.

HCG opens only the excess fat cells allowing excess fat to be burned. No other time in the human body does this happen, and so other diets often remove fat cells the body needs, causing us to lose in places we don't want to first, and finally where you need it. HCG burns the excess fat cells taking the needed fat, and literally sculpting the body, losing inches as well as pounds.

### How Does hCG work?

hCG is taken orally, under the tongue to be rapidly absorbed which allows a person to subsist more on their stored fat than on what they eat. It triggers the body to provide a constant flow of "food" received from the fat that your body is breaking down and using. That means burning 3500 to 4000 calories of stored fat and losing 1 to 2 pounds a day!

### What is hCG?

hCG (Human Chorionic Gonadotropin) is a natural hormone produced in large quantities during pregnancy to ensure proper nutrients to a developing baby. hCG is what triggers the hypothalamus to mobilize stored fat into the bloodstream to be used as "food". It is believed to reset your metabolism and to protect your body's good fat and keep muscle tissue from breaking down (which occurs in other low calorie diets without the use of hCG).

Our product is a professional grade homeopathic hCG weight loss product that is made in the USA.

93.     The claims made with respect to the "science" behind Defendants' "homeopathic hCG" and the hCG Diet are false and deceptive as there is no accepted credible scientific evidence supporting the claim that taking hCG promotes weight loss beyond that resulting from caloric restriction, that hCG "sculpts" the body or otherwise causes a more attractive or "normal" distribution of fat, or that hCG decreases the hunger and discomfort associated with calorie-restricted diets.

Page 29  -  COMPLAINT

94.     Similarly, the Internet website maintained by Estes and Legacy Group at

*LegacyHCG.com* includes a Frequently Asked Questions ("FAQs") page that purports to answer

various questions about Defendants' LEGACY-branded "homeopathic hCG" drops and pellets,

including the following:

> **What is the difference between homeopathic hCG and hCG injections?**
>
> The hCG we sell is homeopathic. The way the homeopathic hCG is produced is by taking small amounts of the original strength hCG and making it into a sublingual mixture which is administered under the tongue. The homeopathic version is then taken 3 times a day to keep the amount of hCG in your body constant. We have many clients who have tried both versions, and report no differences between the two (other that [sic] no painful shots).
>
> . . . .
>
> **Are there any side effects with using hCG?**
>
> Very few experience slight headaches or dizziness for the first few days but this is extremely rare and mild. hCG has been used for weight loss for 50+ years, so there is plenty of evidence to back up its safety.
>
> **Where is Legacy HCG Manufactured?**
>
> Our hCG is manufactured in FDA approved labs in the US. Authentic hCG only comes from within the United States.
>
> . . . .
>
> **How many IU's are in sublingual hCG?**
>
> 30 drops per day = 125 IU per day
> 36 drops per day = 150 IU per day (this works best for most people)
> 42 drops per day = 175 IU per day
>
> . . . .

**Is it healthy to lose 1-2 pounds a day with hCG?**

While losing 1-2 pounds daily without the use of hCG would be unhealthy, the hCG in fact changes this. You lose fat and the weight loss comes directly from this fat loss and does not strip the body.

**Why does this not have to be refrigerated?**

This hCG does not have to be refrigerated because it is made in the homeopathic method and mixed with 16% usp alcohol as part of its liquid medium. The alcohol acts as a preservative and keeps the hCG active and effective. If you are not going to use an open bottle of hCG for a few days or several weeks, you should place the bottle in the refrigerator to hold its potency over longer periods.

. . . .

**Why the 500 calorie diet?**

hCG causes your hypothalamus to mobilize the fat out of the fat storage locations so that it is available for use. While you are only consuming 500 calories, your hypothalamus is continually releasing the fat stored in your body. Because of this, your body is actually operating on thousands of calories a day. The result is your body using thousands of calories from fat from your body each day; the reason hCG dieters lose 1-2 pounds of fat or more, per day.

**Will I be hungry on 500 calories a day?**

It is common for mild hunger during the first few days[;] however this will pass and by the 2nd week. You will find even very tiny servings, to be completely satisfying. This is partly due to your hypothalamus adjusting your metabolic rate, but largely due to the amount of calories circulating in your system from the fat being released. It is common that hCG dieters feel as though they are stuffing themselves in order to reach that 500 calorie limit.

. . . .

70975491.2 0015023-00238

**Will I lose more weight if I use the injections instead of the homeopathic hCG?**

Patients report the same results from both forms of hCG. The difference is that the inject able [sic] generally costs $600 plus for a 5 week program, and by law you should have a prescription from a doctor. We offer both forums [sic] of the HCG Diet.

95.     The claims made in these FAQs are false and/or deceptive because, among other things:

- There is no accepted credible scientific evidence that ingesting hCG promotes weight loss beyond that resulting from caloric restriction, that hCG "sculpts" the body or otherwise causes a more attractive or "normal" distribution of fat, that hCG "changes" the negative health impact of losing 1-2 pounds daily, that hCG causes the hypothalamus to "mobilize" the fat out of "fat storage locations" so that it is available for use, or that hCG decreases the hunger and discomfort associated with calorie-restricted diets;

- "Homeopathic hCG" not only lacks FDA approval, it is a mislabeled drug distributed and sold in violation of federal law;

- "Homeopathic hCG" contains no more than trace amounts of hCG, if any, and is not the same as concentrated prescription hCG;

- There is no scientific basis to claim the same diet-related results from "Homeopathic hCG" that the prescription injectable hCG produces – unless the claim is that neither produces any results;

- The drop to IU equivalencies provided is, on information and belief, for a sublingual preparation of prescription strength hCG, not for the highly diluted "Homeopathic hCG";

Page 32  -  COMPLAINT

- The recognized health and safety risks of hCG include but are not limited to the fact that anaphylaxis and other hypersensitivity reactions have been reported with the use of hCG products;

- FDA approval of manufacturing facilities does not equate with FDA approval of the manufactured product; and

- There is no scientific basis to claim that the use of 16% usp alcohol as part of the diluter in "homeopathic hCG" acts as a preservative or keeps the hCG "active and effective," or that refrigeration allows the purported "homeopathic hCG" product offered by Defendants to hold its potency.

96.     On information and belief, Defendants knew or should have known that their representations regarding their LEGACY-branded "homeopathic hCG" oral drops and pellets detailed above were false or materially misleading and deceptive.

97.     On information and belief, consumers in Oregon, Washington and elsewhere have been misled by the foregoing misrepresentations regarding the content, efficacy and safety of Defendants' LEGACY-branded "homeopathic hCG" oral drops and pellets. On information and belief, consumers in Oregon, Washington and elsewhere have considered and based their decision to purchase and use Defendants' LEGACY-branded "homeopathic hCG" oral drops and pellets in substantial part on the above-cited misrepresentations.

98.     Defendants understood that consumers in Oregon, Washington and elsewhere would attach importance to the existence and truth of the foregoing representations in deciding whether to purchase Defendants' LEGACY-branded "homeopathic hCG" oral drops and pellets and would consider these representations material.

Page 33 - COMPLAINT

9

99. Moreover, Defendants understood that consumers in Oregon, Washington and elsewhere would attach significance to the Defendants' use of the LEGACY, LEGACY HEALTH, LEGACY HCG and LEGACY HEALTH GROUP marks and/or trade names in evaluating the foregoing representations and deciding whether to purchase Defendants' LEGACY-branded "homeopathic hCG" oral drops and pellets, and would consider the use of these marks and/or trade names as indicating that the foregoing representations originated from, or were sponsored by or affiliated with, Legacy, and as material to their purchasing decision.

100. As a result of the above misrepresentations and omissions of material fact, consumers in Oregon and Washington specifically have, or have likely, been misled into purchasing and paying for a product and services that are not as represented. Consumers in Oregon and Washington have thus suffered injury in fact and a loss of money or property in that they have been deprived of the benefit of their bargain and have spent money on products and services that lacked the values, characteristics, uses or benefits they were led by Defendants to believe they had.

101. As a result of Defendants' use of the purported trade names or marks LEGACY, LEGACY HEALTH, LEGACY HCG and LEGACY HEALTH GROUP in the course of making the above misrepresentations and omissions of material fact, consumers in Oregon and Washington have, or have likely, been misled or confused into believing that Legacy is the source of, or sponsors or is somehow affiliated with, a product those consumers purchased and paid for that is not as it was represented. Legacy has thus suffered injury in fact and a loss of money or property in that it has suffered injury to its reputation and goodwill.

70975491.2 0015023-00238

## G.    Harm to Legacy.

102.    Defendants' LEGACY-branded products and services are not associated in any way with Legacy or its authentic products, services or marks.

103.    Defendants' use of Legacy's registered and common law LEGACY trademarks is without the permission or authorization of Legacy, and Legacy has never licensed or otherwise authorized Defendants to use any of Legacy's trademarks.

104.    Defendants' use of Legacy's trademarks is likely to cause consumer confusion. Actual and potential customers are likely to assume that Defendants either are (i) authorized by Legacy to use the LEGACY trademarks or (ii) sponsored or licensed by, or affiliated with, the source of authentic LEGACY brand products and services offered by or through Legacy.

105.    Defendants' use of the LEGACY trademarks has resulted in actual or likely confusion among Defendants' own distributors. For example, when one of Defendants' customers in Portland, Oregon first signed up to become a Legacy Group distributor, she made the following post to her personal "blog" page: "I am so in love with HCG and it's [sic] wonderfully positive effects that I have decided to become a distributor!  I am now a Distributor for Legacy Health System's HCG protocol!"  Defendants have never used the word "System" in their name while Legacy has used System as part of its registered LEGACY HEALTH SYSTEM® mark.

106.    Defendants' false and deceptive marketing of their LEGACY-branded products and services is also likely to deceive and mislead consumers into believing that Defendants' LEGACY-branded products and services, and the misrepresentations made in connection with the marketing of such products and services, derive from the same source as, or are sponsored,

Page 35  -   COMPLAINT

approved or affiliated with, Legacy or authentic products and services marked or marketed under the LEGACY trademarks.

107.    Defendants seek and receive a direct material benefit from their unauthorized and improper use of the LEGACY trademarks.

108.    Legacy is suffering irreparable harm caused by Defendants' distribution of "homeopathic hCG" oral drops and pellets and other products and dietary services using the LEGACY trademarks, and by Defendants' false and misleading advertising of products and services sold using the "LEGACY" brand.

109.    As a result of Defendants' conduct, Legacy is suffering damage to the valuable goodwill it has built in the LEGACY trademarks, as well as suffering injury to its reputation from consumers who believe they are buying LEGACY® brand goods and services when purchasing goods and services from Defendants.

110.    As a result of Defendants' conduct, the public's exclusive identification of the regionally famous LEGACY Marks with Legacy is being eroded, the positive association and prestigious connotations of the LEGACY trademarks are being tarnished and degraded, and the capacity of the marks to identify and distinguish goods and services is otherwise lessening.

**H.    Defendants' Conduct Has Been Deliberate and Willful.**

111.    As of the time Defendants adopted and began use of the LEGACY Marks and/or confusingly similar variants thereof to provide infringing goods and services in commerce, and as of the time Defendants registered, used, and/or trafficked in the *legacyhealthgroup.com* and *legacyhcg.com* domain names, Defendants had actual or constructive knowledge of Legacy's federal registrations for the LEGACY Marks.

70975491.2 0015023-00238

112. Defendants have continued to use the LEGACY Marks and confusingly similar variants thereof to sell and distribute goods and services in commerce, and to use and/or traffic in the confusingly similar *legacyhealthgroup.com* and *legacychg.com* domain names, after and despite receiving actual notice of Legacy's federal registrations for the LEGACY Marks and Legacy's objections to Defendants' conduct.

113. On information and belief, Defendants knowingly, willfully, intentionally and maliciously adopted and used confusingly similar imitations of Legacy's LEGACY Marks, and registered, used and/or trafficked in the *legacyhealthgroup.com* and *legacychg.com* domain names in bad faith. Defendants did not act in good faith in adopting the use of LEGACY in connection with their business or the goods and services they offer to the public.

114. On information and belief, Defendants made, published and disseminated false or misleading statements deliberately and intentionally, knowing they were false and with the purpose to mislead and confuse consumers, and to cause injury to Legacy in its reputation and business. Defendants' false statements were intended to influence, have influenced and are likely to continue to influence customers and potential customers in making their purchasing decisions.

### FIRST CLAIM FOR RELIEF
### (Infringement of Federally Registered Trademarks, 15 U.S.C. § 1114)
### (Against all Defendants)

115. Legacy repeats and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as if set forth fully herein.

116. Defendants' unauthorized use of the terms "LEGACY," "LEGACY HEALTH," "LEGACY HEALTH GROUP," "LEGACY HCG" and other variations thereof in connection with the sale, offering for sale, distribution and advertising of goods and services has caused and

Page 37 - COMPLAINT

is likely to cause confusion, mistake or deception as to the origin of Defendants' goods and services and to mislead consumers into believing that Defendants' products originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Legacy.

117. Defendants' activities constitute infringement of Legacy's trademark rights in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

118. Defendants' aforesaid acts of infringement have caused Legacy to sustain economic damage, loss and injury, to an extent not yet ascertained. Legacy is entitled to recover actual damages and Defendants' profits under 15 U.S.C. § 1117(a) in an amount to be determined at trial. Defendants' infringement is and was intentional and in bad faith. Accordingly, Legacy is entitled to an award of enhanced damages under 15 U.S.C. § 1117(a)(3) in an amount up to three times the actual damages.

119. Defendants' acts of infringement, unless preliminarily and permanently enjoined, will continue to cause Legacy to sustain irreparable damage, loss and injury, and to confuse or mislead the public, for which Legacy has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (False Advertising and Unfair Competition, 15 U.S.C. § 1125(a))
### (Against all Defendants)

120. Legacy repeats and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as if set forth fully herein.

121. Legacy possesses valuable common law rights to the LEGACY Marks, and the goodwill appurtenant thereto.

122. Defendants' unauthorized use of the terms "LEGACY," "LEGACY HEALTH," "LEGACY HEALTH GROUP," "LEGACY HCG" and other variations thereof in connection with the sale, offering for sale, distribution and advertising of goods and services and use in

70975491.2 0015023-00238

commerce in connection with Defendants' good and services is likely to cause customer confusion or mistake, or to deceive as to the affiliation, connection, association, sponsorship or approval of Defendants' goods by Legacy.

123. By engaging in the unauthorized activities described above, Defendants have also made, and continue to make, false, deceptive and misleading statements constituting false representations and false advertising made in connection with the sale of goods or services distributed in interstate commerce.

124. Defendants are liable under 15 U.S.C. § 1125(a) for unfair competition and false advertising.

125. Defendants' aforesaid acts of unfair competition and false advertising have caused Legacy to sustain economic damage, loss and injury, to an extent not yet ascertained. Accordingly, Legacy is entitled to recover actual damages and Defendants' profits under 15 U.S.C. § 1117(a) in an amount to be determined at trial. Defendants' unfair competition and false advertising is and was intentional and in bad faith. Accordingly, Legacy is entitled to an award of enhanced damages under 15 U.S.C. § 1117(a)(3) in an amount up to three times the actual damages.

126. Defendants' acts of unfair competition and false advertising, unless enjoined by this Court, will continue to cause Legacy to sustain irreparable damage, loss and injury, for which Legacy has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### (Cyberpiracy, 15 U.S.C. § 1125(d))
### (Against Legacy Group and Estes)

127. Legacy repeats and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as if set forth fully herein.

Page 39 - COMPLAINT

128.    On information and belief, Defendants LHG and/or Estes are either the domain name registrant for the *LegacyHealthGroup.com* and *LegacyHCG.com* domains or that registrant's authorized licensee.

129.    Defendants LHG and Estes have registered, trafficked in and/or used domain names that are identical or confusingly similar to or dilutive of the LEGACY Marks, including at least *LegacyHealthGroup.com* and *LegacyHCG.com* with bad faith intent to profit from their predatory acts.

130.    Defendants' activities constitute cyberpiracy in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

131.    Defendants' aforesaid acts of cyberpiracy have caused Legacy to sustain economic damage, loss and injury, to an extent not yet ascertained. Accordingly, Legacy is entitled to recover actual damages and Defendants' profits under 15 U.S.C. § 1117(a) in an amount to be determined at trial. Alternatively, Legacy may elect, at any time before final judgment is rendered, to recover instead of actual damages and profits, an award of statutory damages in the amount of not more than $100,000 per domain name under 15 U.S.C. § 1117(d).

132.    Defendants' cyberpiracy is and was intentional and in bad faith. Accordingly, Legacy is entitled to an award of enhanced damages under 15 U.S.C. § 1117(a)(3) in an amount up to three times the actual damages.

133.    Defendants' acts of cyberpiracy, unless enjoined by this Court, will continue to cause Legacy to sustain irreparable damage, loss and injury, for which Legacy has no adequate remedy at law.

Page 40 -  COMPLAINT

## FOURTH CLAIM FOR RELIEF
### (Oregon State Trademark Dilution, Or. Rev. Stat. § 647.107)
### (Against all Defendants)

134. Legacy repeats and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as if set forth fully herein.

135. Legacy has extensively and continuously promoted and used the registered LEGACY Marks in the state of Oregon, and the LEGACY Marks have acquired substantial distinctiveness since their first use in commerce and have thereby become regionally famous and a symbol of Legacy's goods and services.

136. Defendants are making commercial use in commerce of marks in Oregon that dilute and is likely to dilute the distinctiveness of the LEGACY Marks by eroding the public's exclusive identification of this regionally famous mark with Legacy, tarnishing and degrading the positive association and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish goods and services.

137. Defendants' actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with the LEGACY Marks or to cause dilution of the LEGACY Marks, to the great and irreparable injury of Legacy.

138. Pursuant to ORS 647.107, Legacy is entitled to a preliminary and permanent injunction against Defendants' current and future use of the LEGACY Marks, or any colorable imitation or confusingly similar variation of the LEGACY Marks, in connection with the advertising, promotions, distribution and/or sale of Defendants' goods and services. Legacy is also entitled to an injunction prohibiting any other use that dilutes the distinctive quality of the LEGACY Marks.

Page 41 - COMPLAINT

## FIFTH CLAIM FOR RELIEF
### (Violation of Washington Consumer Protection Act, Wash. Rev. Code § 19.86.20)
### (Against all Defendants)

139.    Legacy repeats and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as if set forth fully herein.

140.    Legacy is a person within the meaning and coverage of the Washington Consumer Protection Act, Washington Revised Code chapter 19.86 ("CPA").

141.    The CPA provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of commerce are hereby declared unlawful."

142.    Based on the material facts alleged above, Defendants deceived citizens of Washington within the meaning of the CPA. Defendants' unfair and deceptive conduct occurred in the conduct of trade or commerce.

143.    In the conduct of trade or commerce regarding the marketing, promotion, distribution and sale of Defendants' LEGACY-branded products, Defendants engaged in the unfair or deceptive act or practice of promoting Defendants' LEGACY-branded "homeopathic hCG" oral drops and pellets as effective for promoting weight loss and as sponsored by, affiliated with or sourced from Legacy.

144.    The marketing, advertising, packaging, labeling and other promotional materials for Defendants' LEGACY-branded products were false, untrue, misleading, unfair, deceptive and/or likely to deceive, including representations about the hCG Diet and Defendants' products and services.

145.    Defendants knew or should have known that the representations and omissions in the marketing, advertising, packaging, labeling and other promotional materials for Defendants'

Page 42  -  COMPLAINT

LEGACY-branded products and services were false, untrue, misleading, unfair, deceptive, likely to deceive and/or otherwise unlawful.

146.    Defendants used or employed such unfair, deceptive and unlawful acts or practices with the intent that consumers, including but not limited to citizens of Washington, rely thereon.

147.    In reliance on the unfair, deceptive and unlawful acts or practices used by Defendants, citizens of Washington purchased Defendants' LEGACY-branded products promoted, marketed, distributed and/or sold by Defendants, who deceptively represented the qualities, characteristics and/or benefits of such products and the source, affiliation and/or sponsorship of such products. These consumers would not have purchased these products or paid as much for them but for the unfair, deceptive and unlawful acts of Defendants detailed above.

148.    Defendants' deceptive acts and practices impact the public interest and have the capacity to deceive a substantial portion of the public in the state of Washington. The acts were committed in the course of Defendants' business; the acts are part of a pattern or generalized course of business; the acts were committed repeatedly; there is a real and substantial potential for repetition of Defendants' conduct in the future; and many consumers were affected or are likely to be affected.

149.    Defendants' unfair and deceptive acts have directly, foreseeably and proximately caused damage to Legacy and its reputation and goodwill, making such deceptive acts and practices illegal and requiring injunctive relief.

150.    Each individual offending advertisement and marketing statement constitutes a separate and distinct violation of the CPA.

151.     Each misleading label or marketing image constitutes a separate and distinct violation of the CPA.

152.     Defendants' conduct showed complete indifference to or conscious disregard for the rights and safety of others.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for a judgment and the following relief against Defendants:

A.     Awarding Plaintiff up to three times Defendants' profits, and up to three times the amount found as Legacy's actual damages, for Defendants' infringement of Plaintiff's LEGACY trademarks, unfair competition, false and misleading advertising, and unfair or deceptive acts or practices as stated herein;

B.     Awarding Plaintiff up to three times Defendants' profits and up to three times the amount found as actual damages or, in the alternative, statutory damages of not less than $1,000 and not more than $100,000 per domain name, for Defendants' cyberpiracy;

C.     Entering a preliminary and permanent injunction against:

    (a)     Defendants' use of Plaintiff's LEGACY trademarks, or any colorable imitation or confusingly similar variation of such marks, in connection with the sale of or any advertisement for the sale of any health or healthcare related product or service, wellness product or service, nutritional or dietary supplement, dietary or exercise program or product, hospital services or products, drug, homeopathic remedy, or medical services, dietary services, weight loss services, or similar services or products;

    (b)     Defendants' making any materially false or misleading statement, claim or assertion with respect to (i) Plaintiff, (ii) Plaintiff's products or services, (iii) Defendants, (iv) Defendants' products or services or (v) the relationship between

Page 44  -   COMPLAINT

Plaintiff and Defendants or between Plaintiff's and Defendants' products or services;

(c)     Defendants' disseminating, or causing the dissemination of, any advertisement, by any means in commerce, promoting any service or treatment that involves the use of hCG, or any other drug required under the Federal Food, Drug and Cosmetic Act, to be approved by FDA as being both safe and effective for the treatment of the conditions for which it is to be used, until such drug has received the required FDA approval;

(d)     Defendants' disseminating, or causing the dissemination of, any advertisement, by any means in commerce, promoting any service or treatment that involves the use of any drug labeled as "homeopathic" until such drug has been listed in the Homeopathic Pharmacopeia of the United States, or an addendum or supplement thereto;

(e)     Defendants' disseminating, or causing the dissemination of, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase of any such weight reducing service or treatment in commerce, any advertisement that fails to comply with the requirements under paragraphs (c) and (d) hereof;

(f)     Defendants' disseminating, or causing the dissemination of, any advertisement, by any means in commerce, stating that:

     (i)     hCG is an effective aid in the treatment of obesity;

     (ii)     hCG increases weight loss beyond that resulting from caloric restriction;

     (iii)     hCG sculpts the body or otherwise causes a more attractive or normal distribution of fat;

70975491.2 0015023-00238

(iv)     hCG decreases the hunger and discomfort associated with calorie-restrict diets;

(v)      hCG is safe for women and men;

(vi)     "homeopathic hCG" is the same or the equivalent of prescription hCG;

(vii)    hCG is actually good for you;

(viii)   hCG may prevent breast cancer; or

(ix)     hCG resets the hypothalamus.

D.       Ordering the forfeiture or cancellation of the *LegacyHealthGroup.com* and *LegacyHCG.com* domain names or the transfer of these domain names to Legacy;

E.       Awarding Plaintiff its costs of the action and its reasonable attorney fees; and

F.       Awarding Plaintiff such other and further relief as the Court deems equitable, just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.


DATED:  November 4, 2011.

STOEL RIVES LLP

RANDOLPH C. FOSTER
OSB No. 784340
STEVEN E. KLEIN
OSB No. 051165
Telephone:  (503) 224-3380

Attorneys for Plaintiff


Page 46  -  COMPLAINT